IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| QUINTERIUS LARTREEZE SMITH, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | Civil Action No.<br>2:16cv246-ALB<br>[WO] |

### **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Petitioner Quinterius Lartreeze Smith's 28 U.S.C. § 2255 motion (Doc. No. 1)[1] is submitted on the pleadings, written submissions, and an evidentiary hearing.

### **I. BACKGROUND**

On November 13, 2014, Smith appeared before this court and pled guilty under a plea agreement to conspiracy to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & 846, and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). The plea agreement contained a waiver provision whereby Smith relinquished his right to appeal and collaterally attack his sentence except on grounds of ineffective assistance of counsel and prosecutorial misconduct. On May 19, 2015, the district court sentenced Smith to 123 months in prison, consisting of 63 months

---

[1] References to document numbers assigned by the Clerk of Court are designated as "Doc. No." Pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system, which may not correspond to pagination on the "hard copy" of the document presented for filing.

for the conspiracy count and a consecutive term of 60 months for the firearm count. Smith took no direct appeal.

On March 29, 2016, Smith, proceeding *pro se*, filed this § 2255 motion raising claims that his counsel was ineffective for (1) failing to file a notice of appeal after he asked counsel to do so, and (2) advising Smith to plead guilty to the § 924(c) firearm count when the Government would not have been able to prove that offense at a trial. Doc. No. 1 at 3–4; Doc. No. 1-1 at 2–7; Doc. No. 1-2 at 3. In addition, Smith claims that his § 924(c) conviction violates *Johnson v. United States*, 135 S. Ct. 2551 (2015). Doc. No. 1 at 3; Doc. No. 1-1 at 5–6; Doc. No. 1-2 at 3.

This court set an evidentiary hearing on whether Smith's former counsel, Donnie Bethel, rendered ineffective assistance by failing to file an appeal despite being asked to do so. The court appointed new counsel to represent Smith at the evidentiary hearing, which was held on July 19, 2019. Smith and Bethel testified. Based on the evidence presented at the evidentiary hearing, and the court's consideration of the parties' submissions and the record, the court concludes that Smith's § 2255 motion should be denied and this case dismissed with prejudice.

## II. DISCUSSION

**A.   General Standard of Review**

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the

maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

**B.     Claims of Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel is evaluated against the standard announced in *Strickland v. Washington*, 466 U.S. 668 (1984). To make a showing of ineffective assistance, a petitioner must prove two things: (1) "counsel's performance was deficient;" and (2) "the deficient performance prejudiced the defense." *See id*. at 687. Performance is deficient when "it f[alls] below an objective standard of reasonableness and [i]s outside the wide range of professionally competent assistance." *See Johnson v. Sec'y, DOC*, 643 F.3d 907, 928 (11th Cir. 2011) (internal quotation marks omitted). Under the prejudice prong, the petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Unless a petitioner makes the showings required on both parts of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the required showings has not been made, it need not decide whether the other has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### *1.    Counsel's Failure to File Appeal*

Smith claims that his former lawyer, Donnie Bethel, rendered ineffective assistance of counsel by failing to file a notice of appeal after he asked Bethel to do so. Doc. No. 1 at 4; Doc. No. 1-1 at 3 & 7; Doc. No. 1-2 at 3.

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the United State Supreme Court held that *Strickland v. Washington*, 466 U.S. 668 (1984), applies to determine whether counsel was ineffective for failing to file a notice of appeal. *Flores-Ortega*, 528 U.S. at 477. Regarding the first part of *Strickland*—whether counsel's representation fell below an objective standard of reasonableness—the Supreme Court reaffirmed that "an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se." *Gomez-Diaz v. United States*, 433 F.3d 788, 791–92 (11th Cir. 2005) (citing *Flores-Ortega*, 528 U.S. at 477). In such cases, prejudice is presumed, and the petitioner is entitled to a new appeal with no further showing. *Flores-Ortega,* 528 at 483 ("The . . . denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right, . . . demands a presumption of prejudice.").

Even if a client has not made a specific request of his counsel to file an appeal, counsel generally must "consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant in the defendant's position would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480; *see also, e.g., Thompson v. United States*, 504 F.3d 1203, 1206

4

(11th Cir. 2007). Adequate consultation means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478; *Thompson*, 504 F.3d at 1206.

<u>Smith's Testimony at Evidentiary Hearing</u>

At the evidentiary hearing, Smith testified that Bethel visited him at the Montgomery County Jail on May 21, 2015, two days after his sentencing. At that time, according to Smith, he told Bethel he wanted to appeal his § 924(c) conviction. Smith said that Bethel replied that an appeal would not succeed because Smith had waived his appeal rights. Smith maintained that he told Bethel he wanted to appeal nevertheless, because, at sentencing, the district judge had stated that he had grounds for an appeal.[2]

Smith testified that shortly after his May 21, 2015 conversation with Bethel at the jail, he wrote Bethel a letter reiterating his wish to appeal his § 924(c) conviction. (Smith said he did not make or keep a copy of this letter.) According to Smith, Bethel returned to the Montgomery County Jail on June 1, 2015, to talk to an inmate named Rodriquez Mclean, whose criminal case Bethel was handling. Smith testified that when he learned

---

[2] A review of the sentencing transcript reveals no such comments by the district judge telling Smith he had grounds for an appeal. With specific regard to Smith's appeal rights, the district judge stated:

> I need to give you your appeal rights. You've waived most of your rights to appeal, but you may appeal in certain very limited circumstances. Should you want an appeal and not be able to afford the cost of an appeal, you may apply to proceed with an appeal at no cost to you. The law requires me to give you that notice.

Doc. No. 7-8 at 17.

Bethel was coming to visit Mclean, he asked Mclean to tell Bethel that he wanted to talk to him. Smith testified that after Bethel was finished talking to Mclean, he spoke to Bethel at the jail and told Bethel he wanted to appeal because he believed he had grounds for overturning his § 924(c) conviction. According to Smith, Bethel told him he would "get back in contact with him and see what was going on."

Smith said that he did receive a letter from Bethel a day or two after June 1, 2015, in which Bethel informed Smith that he did not intend to file an appeal on his behalf. Smith acknowledged that Bethel's letter advised him that (1) if he believed he had grounds for appeal, he should contact Bethel immediately; (2) any notice of appeal needed to be filed by June 10, 2015; and (3) Bethel's office (the Federal Defender for the Middle District of Alabama) would accept a collect phone call from him.[3] Smith maintained, however, that because he was, by that time, convinced that Bethel would not file an appeal, he did not try to contact Bethel after receiving the letter. Smith's next legal action regarding his convictions was to file this § 2255 motion in March 2016.

On cross-examination, Smith acknowledged that although his testimony was that Bethel had indicated to him that he would not file an appeal, he stated in his § 2255 motion that Bethel had told him he would file an appeal (but then failed to do so). Smith attempted to clarify this discrepancy by explaining that Bethel had told him he would "look into" an appeal.

Bethel's Testimony at Evidentiary Hearing

---

[3] Bethel's letter to Smith was admitted into evidence at the evidentiary hearing. Doc. No. 31-6 at 1.

At the evidentiary hearing, Bethel testified unequivocally that Smith never asked him to file an appeal. Bethel, an experienced attorney with the Federal Defender's Office who estimated that he had handled cases for over a thousand defendants, stated that if Smith had asked him to file an appeal, he would have done so notwithstanding the appeal waiver in the plea agreement. Bethel stated he had "no choice" but to file an appeal for any client who asks him to do so. According to Bethel, only a handful of his clients had ever asked him to file an appeal after pleading guilty under a plea agreement with an appeal waiver. But, in those cases, he had filed the appeal as requested.

Bethel denied having a conversation with Smith following a visit to another client at the Montgomery County Jail on June 1, 2015, particularly not one in which Smith told Bethel that he wanted to appeal. The Government introduced time records kept by Bethel in connection with his employment with the Federal Defender. Doc. No. 31-5 at 1. In those time records, which Bethel stated he kept roughly contemporaneously with the events they recorded, there was no indication that Bethel had met with or talked to Smith at the jail on June 1, 2015. Bethel stated that if he had met with Smith at the jail on that date, the time records would have reflected such a meeting.

Bethel testified that his last meeting with Smith took place on May 21, 2015, after which, he said, he had no further contact with Smith. Beside denying that a June 1, 2015 meeting with Smith ever occurred, Bethel said that he never received a letter from Smith asking him to file an appeal, nor did Smith contact him after he sent Smith the letter telling him that he did not intend to file an appeal, but to contact him immediately if he wished to appeal.

7

Bethel reiterated that at no time before, during, or after sentencing did Smith ask him to file an appeal. He further repeated that if Smith had asked him to do so, he would have filed an appeal as requested. Bethel stated that he had no reason to believe that Smith wanted to appeal, or that a defendant in Smith's position would have wanted to appeal. He said that Smith never indicated that he was upset or surprised that he was not filing an appeal.

The testimony of Bethel and Smith regarding whether Smith asked Bethel to file an appeal cannot be reconciled. The court is therefore required to make credibility determinations considering the interests of the witnesses in the outcome of the proceedings, the consistencies or inconsistencies in their testimony, their demeanor on the stand, and the record as a whole. *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). The court finds that the preponderance of credible evidence, including the exhibits admitted into evidence at the evidentiary hearing, supports Bethel's testimony that Smith did not ask him to file an appeal and never indicated that he wanted to appeal. In this regard, the court finds Bethel that had no incentive not to file an appeal had he been asked to do so. For attorneys with the Federal Defenders Office, the filing of notices of appeal for clients – including clients who have waived their appeal rights – is commonplace. Further, Bethel's denial that he met with Smith at the Montgomery County Jail on June 1, 2015, is credible on its face, and is bolstered by the time records entered in evidence, which contained no indication that Bethel met with Smith at the jail on that date.

Conversely, the court finds Smith's testimony that he met with Bethel at the jail on that date, and told Bethel he wanted to appeal, not to be credible. Smith testified that this

8

meeting concluded with Bethel's telling him that he would "get back in contact with him and see what was going on" regarding filing an appeal. Although Smith acknowledged receiving Bethel's letter telling him to contact Bethel immediately if he wished to appeal only a day or two after the alleged June 1, 2015 conversation, Smith stated he did not try to contact Bethel after receiving the letter because he was by that time convinced Bethel would not file an appeal. This testimony by Smith was not consistent with his testimony that his alleged conversation with Bethel only a day or two earlier ended with Bethel's stating he would get back in touch with Smith about filing an appeal – a statement that, when combined with Bethel's letter telling Smith to contact him immediately if he wished to appeal, undermines Smith's contention that he was by that time convinced Bethel would not file an appeal for him, and therefore made no effort to contact Bethel. The court finds Smith's testimony regarding these events not to be credible.[4]

There also was some inconsistency between Smith's testimony elsewhere that Bethel indicated to him in their discussions that he would not file an appeal, and Smith's statement in his § 2255 motion that Bethel told him he would file an appeal, but then failed to follow through. Finally, although Smith testified that he sent Bethel a letter reiterating

---

[4] In other words, it makes no sense that Smith would have abandoned the belief that Bethel would file an appeal for him if asked to do so, when, within a two- or three-day period, (1) Bethel (according to Smith's testimony) had told Smith he would get back in touch with him regarding filing an appeal, and (2) Bethel had sent Smith a letter (which Smith admits he received and read) telling Smith to contact him immediately if he wished to appeal and that his office would accept a collect call from Smith.

(continued…)

his wish to appeal shortly after their May 21, 2015 conversation, Bethel testified that he received no such letter, and Smith could not produce a copy of the letter.

In sum, the court concludes that Smith did not ask Bethel to file an appeal. Consequently, Bethel did not render ineffective assistance of counsel by failing to file an appeal on Smith's behalf. Smith is entitled to no relief on this claim.[5]

### 2.     *Counsel's Advice to Plead Guilty to § 924(c) Count*

Smith claims that Bethel rendered ineffective assistance of counsel by advising him to plead guilty to the § 924(c) count when, Smith says, the Government would not have been able to prove his guilt of that offense at a trial. Doc. No. 1 at 3; Doc. No. 1-1 at 3–6; Doc. No. 1-2 at 3. Smith argues that under *Bailey v. United States*, 516 U.S. 137 (1995), his conduct did not establish criminal liability under 18 U.S.C. § 924(c), particularly

---

[5] As noted above, even where a defendant does not specifically ask his counsel to file an appeal, counsel generally must "consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant in the defendant's position would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. However, Smith does not claim that Bethel failed to consult with him about an appeal. He claims only that Bethel failed to comply with his explicit request that he file an appeal. The court's resolution of that fact issue is dispositive of Smith's specific claim of Bethel's ineffective assistance. Although not necessary to the resolution of Smith's specific claim, this court notes that Smith presented no evidence to indicate that he demonstrated to Bethel any interest in appealing by some means less direct than his alleged express instruction to Bethel. Further, there is no evidence that a rational defendant in Smith's position would have wanted to appeal. As the Supreme Court in *Flores-Ortega* stated:

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.

528 U.S. at 486. The relevant factors mentioned in *Flores-Ortega* militate a finding that a rational defendant in Smith's position would have had little basis for wanting to appeal.

because he did not possess or actively use a firearm during the charged drug trafficking crime. Doc. No. 1-1 at Doc. No. 4–5; Doc. No. 1-2 at 3.

In *Bailey*, the Supreme Court held that a conviction under the "use" prong of § 18 U.S.C. 924(c) requires the government to demonstrate "active employment" of the firearm, not its mere possession, during and in relation to the drug trafficking crime. 516 U.S. at 143–44. However, the pre-1998 version of § 924(c) made it an offense only to use or carry a firearm during and in relation to the drug trafficking crime. The *Bailey* decision's narrow interpretation of "use" under § 924(c) prompted Congress to amend the statute in 1998 to add language directed to possessing a firearm "in furtherance of" the predicate crime. *See United States v. Timmons*, 283 F.3d 1246, 1252 (11th Cir. 2002). Smith's offense and indictment occurred after the 1998 revision of the statute.

There are two ways to violate § 924(c): the statute makes it an offense either to (1) use or carry a firearm during and in relation to a crime of violence or drug trafficking crime or (2) possess a firearm in furtherance of such crime. *See Timmons*, 283 F.3d at 1250–53; *United States v. Daniel*, 173 F. App'x 766, 770 (11th Cir. 2006) ("Thus, there are two separate ways to violate the statute: to use or carry a firearm during and in relation to a drug trafficking crime or to possess a firearm in furtherance of a drug trafficking crime.").

Possession of a firearm may be actual or constructive possession, and it may be joint or sole possession. *United States v. Isnadin*, 742 F.3d 1278, 1307 (11th Cir. 2014), citing *United States v. Crawford*, 906 F.3d 1531, 1535 (11th Cir. 1990). "To establish constructive possession, the Government must show that a defendant exercised ownership, dominion, or control over the firearm or the vehicle [or residence] concealing the firearm,"

11

*id.*, as well as "some nexus between the firearm and the drug trafficking offense to show possession was in furtherance of the crime," *Isnadin*, 742 F.3d at 1307 (internal quotation marks omitted), citing *United States v. Gunn*, 369 F.3d 1229, 1234 (11th Cir. 2004).

Section 924(c) does not require the Government to prove that the defendant used or actively employed the firearm; it is enough for the Government to show some nexus to the drug trafficking crime. *United States v. Lopez-Garcia*, 565 F.3d 1306, 1322 (11th Cir. 2009). "[Section] § 924(c)'s 'possession' prong requires a showing that the defendant's possession of the firearm 'helped, furthered, promoted, or advanced the drug trafficking.'" *Id.*, citing *Timmons*, 283 F.3d at 1252. This nexus may "be established by [1] the type of drug activity that is being conducted, [2] accessibility of the firearm, [3] the type of the weapon, [4] whether the weapon is stolen, [5] the status of the possession (legitimate or illegal), [6] whether the gun is loaded, [7] proximity to the drugs or drug profits, and [8] the time and circumstances under which the gun is found." *Lopez-Garcia*, 595 F.3d at 1322, citing *Timmons*, 283 F.3d at 1253 (internal citations and quotation marks omitted).

As reflected in Smith's presentence investigation report ("PSI"), in April 2014, a confidential source informed narcotics officers that Smith and Brandon Porterfield (Smith's codefendant) were dealing crack cocaine from a residence in Montgomery and that he had bought drugs from both Smith and Porterfield at the residence. Doc. No. 9-1 at 5, ¶ 6. The confidential source told officers "that Smith and Porterfield always carried a handgun on their person when they dealt drugs or kept a handgun or a .410 shotgun behind the sofa of the residence." *Id*. On May 1, 2014, the confidential source made a monitored controlled buy of crack cocaine from Smith at the residence. *Id.* at 5, ¶¶ 8 & 9. On May 9,

2014, officers used a confidential informant to make another monitored controlled buy of crack cocaine from Smith and/or Porterfield at the residence, which the confidential informant described as a "trap house," a house where drugs are sold. *Id.* at 5–6, ¶ 10. On May 13, 2014, officers executed a search warrant at the residence and took Smith and Porterfield into custody. *Id.* at 6, ¶ 11. In the search of the residence, officers found quantities of marijuana (41.6 grams), crack and powder cocaine (212.1 grams and 7 grams, respectively), hydrocodone (330.7 grams), and alprazolam (47 pills). *Id*. at 6-7, ¶¶ 11 & 13. Also found during the search were items of drug paraphernalia; utensils for cooking crack cocaine; a set of digital scales; two photographs of Smith and Porterfield holding large sums of money; a Cobra .380 caliber handgun with five rounds of ammunition; and a Mossberg .410 gauge shotgun with 13 shells. *Id.*

Here, the proximity of the illegal substances, along with the cooking utensils for cooking powder cocaine into crack cocaine, the fact Smith was found at the residence where all these drugs were located and all the drug paraphernalia was readily observable, and the evidence that Smith actually conducted drug deals in the house, would have been sufficient evidence from which a jury could find that Smith possessed a firearm in furtherance of a drug trafficking offense. The Government could also have presented the testimony of an experienced narcotics officer who would testify that firearms are carried and used by drug dealers to protect their stashes, their profits, and themselves from others.

Not only could the Government present evidence through the testimony of witnesses that Smith possessed firearms in furtherance of his drug trafficking crime, but it could have proved that Smith—through the reasonably foreseeable acts of his coconspirator,

Porterfield—possessed firearms in furtherance of the drug trafficking crime. *See, e.g., United States v. Williams*, 731 F.3d 1222, 1232–33 (11th Cir. 2013). Under § 924(c), a defendant may be liable for a coconspirator's possession of a firearm if that possession was reasonably foreseeable to the defendant. *Isnadin*, 742 F.3d at 1307.

Contrary to Smith's contention, the Government could easily have proved at trial that Smith possessed a firearm in furtherance of a drug trafficking crime. Therefore, his ineffective assistance of counsel claim lacks merit.

**C.     *Johnson* Claim**

Smith argues that his § 924(c) conviction violates *Johnson v. United States*, 135 S. Ct. 2551 (2015). Doc. No. 1-1 at 5–6; Doc. No. 1-2 at 3.

In *Johnson*, the Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA") was unconstitutionally vague. 135 S.Ct. at 2557, 2563. The Supreme Court confined its holding in *Johnson* to the "violent felony" definition in the ACCA's residual clause; it did not call into question any other portion of the ACCA, such as the ACCA's definition of the term "serious drug offense." *See id.* at 2563; *Bell v. United States*, 688 F. App'x 593, 594–95 (11th Cir. 2017). Recently, in *United States v. Davis*, 139 S.Ct. 2319 (2019), a case decided in the wake of *Johnson*, the Supreme Court held that the "crime of violence" definition in 18 U.S.C. § 924(c)(3)(B), the residual clause for § 924(c) crimes, is (like the ACCA's residual clause) unconstitutionally vague. 139 S.Ct. at 2336. The Supreme Court confined its holding in *Davis* to the § 924(c)(3)(B) residual clause; it did not call into question § 924(c)(3)(A)'s so-called "force clause," and, more important for purposes of Smith's claim, it did call into doubt the validity of the term "drug

trafficking crime" as used in § 924(c). Thus, neither *Johnson* nor *Davis* has any application to convictions under § 924(c) based on drug trafficking crimes. *See, e.g., Pittman v. United States*, 2019 WL 1745377, at *2 (M.D. Fla. 2019) (rejecting petitioner's argument that his § 924(c) conviction was illegal in light of *Johnson*; petitioner's § 924(c) conviction was for possessing a firearm in furtherance of a drug trafficking crime, not a "crime of violence" and thus did not rely on § 924(c)(3)(B)'s residual clause).

Smith's claim that his § 924(c) conviction violates *Johnson* is without merit and entitles him to no relief.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Smith be DENIED and this case DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation or before August 19, 2019. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) will bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error

or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done, on this the 2nd day of August, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge